INZER, Justice:
This is an appeal by Robert B. McGuffie and Mary Jo McGuffie from a decree of the Chancery Court of Warren County wherein that court enjoined them from violating a restrictive covenant in maintaining horses on Lot 27 of Sylvan Flats Subdivision. Appellees Edmund B. Duck-worth and Helen S. Duckworth have a cross appeal from that part of the decree wherein the court refused to require appellants to remove from Lot 27 a stable and corral-type enclosure. We affirm on direct and cross appeal.
Sylvan Flats Subdivision was established by Gay and Mendrop outside the city limits of Vicksburg in Warren County in 1953. The original subdivision contained twenty-nine lots. Gay and Mendrop agreed that' certain restrictive covenants would be observed in the subdivision. Thereafter they subdivided other land adjacent to the original subdivision and designated these subdivisions as numbered parts of Sylvan Flats. Part Eight of Sylvan Flats Subdivision was established in 1965 and this subdivision included Lots 28 and 29 of the original subdivision. On September 20, 1962, appellants purchased Lots 25 and 26 of Sylvan Flats Subdivision from Curtis Chance and his wife. At the time of the purchase there was a house located on these lots and appellants reside therein. These two lots faced Porters Chapel Road. On November 23, 1962, appellants purchased Lot 27 of Sylvan Flats Subdivision. This lot joined the other two lots on the west, but it fronted on Gay Boulevard. Both deeds to appellants contain restrictive covenants. The covenants involved here are contained in paragraph (1) and (5) of the covenants and they are as follows:
1. Said property is to be used strictly for a residential purpose and is not to be used for automobile filling stations, repair shops, tourist camps, bill boards, dance halls, night clubs, store or for any other commercial or manufacturing purposes. No residence shall be erected on said land which will be of a value of less than Nine Thousand Dollars ($9,000.00) exclusive of outhouses or other buildings in connection with said residence; any residence or dwelling erected on said lot shall not be used for apartment purposes.
5. No noxious or offensive activity shall be carried on upon said lot nor shall anything be done thereon which may be or may become an annoyance or nuisance to the neighborhood.
After appellants purchased Lot 27 they maintained thereon a barn or stable which was enclosed by a corral-type fence. This corral was approximately 75 by 100 feet and it was divided by interior fences which made it possible to separate the stable from the corral. Appellants maintained horses in the enclosure and at the time of the trial appellants were keeping two horses and a Shetland pony therein.
On March 11, 1966, appellees purchased Lot 58-H of Sylvan Flats Subdivision, Part 8 and constructed thereon a home. This lot was originally designated as Lot 28 and a part of Lot 29 of the original Sylvan Flats Subdivision. Their deed to the property contained the same restrictive covenants as did the deeds of appellants. Appellees’ lot fronted on Gay Boulevard and is immediately west of Lot 27 upon which appellants were keeping their horses.
Appellees specifically alleged in their bill of complaint that appellants were violating the restrictions contained in paragraph (1) of the covenants wherein it is said that said property is to be used strictly for residential purposes and also violating paragraph (5) wherein it provides that no noxious or offensive activity shall be carried on upon said lot or shall anything be done thereon which may be or may become an annoyance or nuisance in the neighborhood. The chancellor after hearing the evidence found that appellants’ action in maintaining horses on Lot 27 of the subdivision violated the residential purpose contained in paragraph (1) of the *181 covenants and mandatorily required and ordered that the horses be removed from the lot and permanently enjoined them from maintaining any horses on Lot 27 of Sylvan Flats Subdivision. However, the chancellor made no finding as to whether appellants maintenance of horses on Lot 27 constituted a violation of paragraph (5) of the covenants.
Appellants urge that since the property of appellees is located in a different subdivision from that of appellants, appel-lees have no right to enforce the restrictive covenants here in question. Appellants do not question the right of the owner of a lot in the same subdivision to enforce the restrictive covenants that apply to the entire subdivision. In this case the lot now owned by appellees was a part of the original subdivision and the fact that it was later included as a part of Part 8 of the Sylvan Flats Subdivision did not take it out from under the original restrictions placed thereon by the developer. It appears that each time the developers added another part to the original subdivision that they applied the same restrictive covenants to the new part. The chancellor held that appellees had a right to enforce the mutual restrictive covenants and we hold that his action in this regard was correct.
Appellants also urge that the trial court was in error in failing to find that the keeping of horses was incidental to the use of their property and therefore permissible. The basis of this contention is that the horses were not being kept on the premises for commercial purposes but were maintained there solely for the pleasure of appellees which is incidental to residential purposes. The trial court held that since Lot 27 was acquired by appellant in a separate transaction from that in which they acquired their residential property the restrictive covenants to use this lot strictly for residential purposes was applicable and the use of the lot for a corral in which horses were maintained violated this covenant. We cannot say that the court was in error in so holding. While there is some division of authority on this point, the better reasoned cases support this holding. Furthermore, in this case the evidence shows that the maintaining of the horses on this lot created noise, offensive odors and flies, and while the chancellor made no finding as to whether the maintenance of the horses violated the covenants contained in paragraph (5), he certainly could have found that this covenant was being violated. However, the result of his finding would be the same if paragraph (5) had been held to be violated.
We find no merit in appellants’ contention that the residential covenant is unenforceable because of abandonment and waiver. The trial court found from the evidence that there was no abandonment or waiver, and we cannot say that it was wrong in so finding, much less manifestly wrong.
Appellees in their cross appeal urge that the trial court was in error in refusing to require appellants to remove from Lot 27 the barn and corral. We find no error in this regard. There is nothing in the restrictive covenants which prohibit the erection of a barn, stable or fence. The restrictive covenants do prohibit the use of the barn or other outbuildings for residential purposes, but they do not prohibit such buildings from being constructed on the lots.
Neither was it error for the court not to make a finding as to whether the keeping of the horses on Lot 27 violated paragraph (5) of the restrictive covenants. No request was made for a separate finding of fact and law relative to this issue and in the absence of such finding, the court cannot be put in error. In any event, as we already have indicated if the court had found that this covenant was being violated, the same result would have been *182 reached as was reached by the findings that were made.
For the reasons stated this case is affirmed on direct and cross appeal.
Affirmed.
GILLESPIE, P. J., and PATTERSON, SMITH and ROBERTSON, JJ., concur.